UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MARIO BUSTAMANTE LEIVA,<br><br>Defendant. | CRIMINAL NO.  25-cr-141 (TNM)<br><br>VIOLATIONS:<br><br>Count 1:<br>18 U.S.C. §§ 1343, 2 (Wire Fraud and Aiding and Abetting)<br><br>Counts 2-3:<br>18 U.S.C. §§ 1343 (Wire Fraud)<br><br>Count 4:<br>22 D.C. Code § 3212(a)(1)(B)(i)<br>(First Degree Theft)<br><br>FORFEITURE ALLEGATION:<br>18 U.S.C. § 981(a)(1)(C),<br>21 U.S.C. § 853(p); 28 U.S.C. § 2461(c) |

**SUPERSEDING INFORMATION**

The United States Attorney charges that, at times material to this Indictment, on or about the dates and times listed below:

**BACKGROUND**

1.  **MARIO BUSTAMANTE LEIVA** resided in the District of Columbia and Virginia.

2.  **CRISTIAN MONTECINO-SANZANA** resided in the District of Columbia and Virginia.

3.  American Express Company was an American bank holding company and financial services corporation that provided credit card services.  American Express's servers were located in Phoenix, Arizona.  A signal was transmitted across state lines to those servers when a transaction was made using an American Express credit card outside of Arizona.

1

4. InComm Financial Services, Inc., provided payment processing services for pre-paid gift cards, including Visa gift cards and National Core Amex gift cards. All activations and transactions on InComm products were processed and authorized from InComm's servers in Atlanta, Georgia, meaning a signal was transmitted across state lines to those servers when an activation and transaction was made outside of Georgia.

## COUNT ONE
### (Wire Fraud and Aiding and Abetting)

5. Paragraphs 1 through 4 are re-alleged herein.

### THE SCHEME TO DEFRAUD

6. Beginning by at least April 12, 2025, and continuing until at least April 15, 2025, in the District of Columbia and elsewhere, the defendants, **BUSTAMANTE LEIVA** and **MONTECINO-SANZANA**, did knowingly devise and intend to devise a scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises; specifically, **BUSTAMANTE LEIVA** and **MONTECINO-SANZANA** would target diners at restaurants in the District of Columbia and elsewhere, stealthily steal their purses, and make fraudulent purchases using the diner's stolen credit cards.

## PURPOSE OF THE SCHEME

7. It was a purpose of the scheme for the defendants, **BUSTAMANTE LEIVA** and **MONTECINO-SANZANA**, to enrich themselves by robbing unsuspecting diners of their belongings and making fraudulent purchases using the diners' credit cards.

## MANNER AND MEANS

8. The manner and means by which the defendants, **BUSTAMANTE LEIVA** and **MONTECINO-SANZANA**, carried out the scheme included, but were not limited to, the following:

   a. Stealthily stealing purses that contained wallets and credit cards from unsuspecting diners at restaurants in Washington, D.C.;

   b. Making unauthorized purchases using stolen credit cards, including the purchase of pre-paid gift cards; and

   c. Making purchases using the pre-paid gift cards that were fraudulently obtained by the defendants using stolen credit cards.

## ACTS IN FURTHERANCE OF THE SCHEME

### The April 12, 2025, Robbery

9. On April 12, 2025, **BUSTAMANTE LEIVA** and **MONTECINO-SANZANA**, entered the Nando's Restaurant, located at 836 F Street NW, Washington, D.C., and, working in concert, stealthily seized a purse belonging to H.G. **BUSTAMANTE LEIVA** and **MONTECINO-SANZANA** then proceeded to exit Nando's with H.G.'s purse, which contained items belonging to H.G., including a credit card.

10. On April 12, 2025, **BUSTAMANTE LEIVA** and **MONTECINO-SANZANA** traveled together to the Safeway located at 490 L Street NW, Washington, D.C., where

3

**MONTECINO-SANZANA** used a credit card belonging to H.G. to make an unauthorized purchase of a $500 Visa gift card ending in 9034 for $507.95. Following this purchase, **BUSTAMANTE LEIVA** and **MONTECINO-SANZANA** departed the Safeway.

11. Between April 12, 2025, and April 15, 2025, **BUSTAMANTE LEIVA** and **MONTECINO-SANZANA** made approximately $462 in purchases using the fraudulently acquired Visa gift card. These included the following purchases:

   a. On April 12, 2025, **BUSTAMANTE LEIVA** and **MONTECINO-SANZANA** paid for a hotel stay at the Motel 6 located at 6711 Georgia Avenue NW, Washington, D.C. This purchase was in the amount of $275.99.

   b. On April 14, 2025, **BUSTAMANTE LEIVA** and **MONTECINO-SANZANA** paid for a hotel stay at the Quality Inn located at 7212 Richmond Highway, Alexandria, VA. This purchase was in the amount of $243.94.

   c. On April 15, 2025, **BUSTAMANTE LEIVA** and **MONTECINO-SANZANA** added value to a SmarTrip card at the King Street Metro station in Alexandria, VA. These purchases were in the amounts of $10.00 and $6.00.

   d. On April 15, 2025, **BUSTAMANTE LEIVA** and **MONTECINO-SANZANA** made at least one purchase at the 7-Eleven located at 3100 Lockheed Boulevard, Alexandria, VA. This purchase was in the amount of $0.07.

12. On or about the date set forth below, in the District of Columbia and elsewhere, **BUSTAMANTE LEIVA** and **MONTECINO-SANZANA**, for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises,

knowingly and intentionally transmitted and caused to be transmitted signals by means of the following wire communications in interstate commerce:

| Count | Approximate Dates | Description |
|---|---|---|
| 1 | April 12, 2025 | **BUSTAMANTE LEIVA** and **MONTECINO-SANZANA** used a credit card they stole from H.G. to make an unauthorized purchase of a $500 Visa gift card for $507.95 at the Safeway located at 490 L Street NW, Washington, D.C., causing a digital transmission to conduct the transaction. |

**(Wire Fraud and Aiding and Abetting, in violation of Title 18 U.S.C. §§ 1343, 2)**

## COUNTS TWO AND THREE
### (Wire Fraud)

13.  Paragraphs 1 through 4 are re-alleged herein.

### THE SCHEME TO DEFRAUD

14.  Beginning by at least April 12, 2025, and continuing until at least April 20, 2025, in the District of Columbia and elsewhere, the defendant, **BUSTAMANTE LEIVA**, did knowingly devise and intend to devise a scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises; specifically, **BUSTAMANTE LEIVA** would target diners at restaurants in the District of Columbia and elsewhere, stealthily steal their purses, and make fraudulent purchases using the diner's stolen credit cards.

### PURPOSE OF THE SCHEME

15.  It was a purpose of the scheme for the defendant, **BUSTAMANTE LEIVA**, to enrich himself by robbing unsuspecting diners of their belongings and making fraudulent purchases using the diners' credit cards.

**MANNER AND MEANS**

16. The manner and means by which the defendant, **BUSTAMANTE LEIVA**, carried out the scheme included, but were not limited to, the following:

    a. Stealthily stealing purses that contained wallets and credit cards from unsuspecting diners at restaurants in Washington, D.C.;

    b. Making unauthorized purchases using stolen credit cards, including the purchase of pre-paid gift cards; and

    c. Making purchases using the pre-paid gift cards that were fraudulently obtained by the defendants using stolen credit cards.

**ACTS IN FURTHERANCE OF THE SCHEME**

<u>The April 17, 2025, Robbery</u>

17. On April 17, 2025, **BUSTAMANTE LEIVA** entered the Westin hotel, located at 999 9th Street NW, Washington, D.C., and stealthily seized a purse belonging to J.C., who was dining at the hotel's restaurant. **BUSTAMANTE LEIVA** then proceeded to leave the Westin hotel with J.C.'s purse, which contained items belonging to J.C., including a credit card.

18. On April 17, 2025, **BUSTAMANTE LEIVA** traveled to the Safeway located at 490 L Street NW, Washington, D.C., where he made two unauthorized purchases using a credit card belonging to J.C. First, **BUSTAMANTE LEIVA** purchased a bottle of Josh Cabernet Sauvignon Wine for $12.12. **BUSTAMANTE LEIVA** then purchased a $400 National Core Amex gift card ending in 3742 for $407.95.

19. On April 26, 2025, **BUSTAMANTE LEIVA** used the National Core Amex gift card to purchase a hotel stay at the Motel 6 located at 6711 Georgia Avenue NW, Washington, D.C. This charge was in the amount of $133.19.

The April 20, 2025, Robbery

20. On April 20, 2025, **BUSTAMANTE LEIVA** entered the Capital Burger restaurant located at 1005 7th Street NW, Washington, D.C., where he stealthily seized a purse belonging to K.N., who was dining at the restaurant. **BUSTAMANTE LEIVA** then proceeded to leave the restaurant with K.N.'s purse, which contained items belonging to K.N., including several personal credit cards and approximately $3,000 in United States currency.

21. **BUSTAMANTE LEIVA** traveled to Angolo Ristorante Italiano located at 2934 M Street NW, Washington, D.C., where he made an unauthorized purchase using one of K.N.'s American Express credit cards. This purchase was in the amount of $15.40.

22. On or about the date set forth below, in the District of Columbia and elsewhere, **BUSTAMANTE LEIVA**, for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowingly and intentionally transmitted and caused to be transmitted signals by means of the following wire communications in interstate commerce:

| Count | Approximate Date | Description |
|---|---|---|
| 2 | April 17, 2025 | **BUSTAMANTE LEIVA** used a credit card he stole from J.C. to make two unauthorized purchases at the Safeway located at 490 L Street NW, Washington, D.C.: (1) a bottle of Josh Cabernet Sauvignon for $12.12; and (2) a $400 National Core Amex gift card for $407.95, causing a digital transmission to conduct the transaction. |
| 3 | April 20, 2025 | **BUSTAMANTE LEIVA** used an American Express credit card he stole from K.N. to make an unauthorized purchase at the Angolo Ristorante Italiano located at 2934 M Street NW, Washington, D.C., in the amount of $15.40, causing a digital transmission to conduct the transaction. |

**(Wire Fraud, in violation of Title 18 U.S.C. § 1343)**

## COUNT FOUR
### (First Degree Theft)

23. Between on or about April 12, 2025 and on or about April 20, 2025, within the District of Columbia, **BUSTAMNTE LEIVA** wrongfully obtained and used property of value, belonging to H.G., J.C., and K.N., on three separate occasions, consisting of approximately $3,931 in United States Currency, with the intent to appropriate the property for his own use and to deprive H.G., J.C., and K.N. of a right to and benefit of the property.

**(First Degree Theft, in violation of Title 22 D.C. Code § 3212(a)(1)(B)(i))**

## FORFEITURE ALLEGATION

1. Upon conviction of the offense alleged in Count One, the defendants **BUSTAMANTE LEIVA** shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). The United States also will seek a forfeiture money judgment against the defendant in an amount equal to the value of any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

2. Upon conviction of any of the offenses alleged in Count Two and Three, the defendant **BUSTAMANTE LEIVA** shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). The United States also will seek a forfeiture money judgment against the defendant in an amount equal to the value of any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

3. If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property that cannot be divided without difficulty;

the defendant shall forfeit to the United States any other property of the defendant, up to the value of the property described above, pursuant to 21 U.S.C. § 853(p).

**(Criminal Forfeiture, pursuant to Title 18 U.S.C. § 981(a)(1)(C), Title 28 U.S.C. § 2461(c), and Title 21 U.S.C. § 853(p))**

Respectfully Submitted,

JEANINE F. PIRRO
United States Attorney

By: */s/ Benjamin Helfand*
Benjamin Helfand
Assistant United States Attorney
D.C. Bar No. 1658708
601 D Street NW
Washington, DC 20530
(202) 252-7059
Benjamin.Helfand@usdoj.gov